UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| DARRYL R. KINLOCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV420-200 |
| | ) | |
| CHATHAM COUNTY | ) | |
| DETENTION CENTERS' | ) | |
| CHIEF ADMIN. and SHERIFF | ) | |
| JOHN T. WILCHER, | ) | |
| | ) | |
| Defendants. | ) | |

# **ORDER**

*Pro se* plaintiff Darryl R. Kinloch filed this case to recover damages for injuries he allegedly suffered when he fell down the stairs at the Chatham County Detention Center. *See* doc. 1 at 5. He also requested leave to pursue his case *in forma pauperis*. Doc. 2. As discussed more fully below, Kinloch must address lingering questions about that request. He has recently filed an additional request for injunctive relief. *See* doc. 17. To fully address that request, the Court has undertaken to screen Kinloch's allegations, pursuant to 28 U.S.C. § 1914A, notwithstanding the remaining questions about his motion to proceed *in forma pauperis*. Finally, he has filed several motions in this case, which are ripe for

disposition. *See* docs. 9 & 15. The Court will address the issues in that order.

## I.     *In Forma Pauperis* Status

As indicated above, Kinloch initially filed this case along with a request for leave to proceed *in forma pauperis*. *See* doc. 2. That request required him to declare, under penalty of perjury, that he "[was] unable to pay the costs of said proceeding or give security therefore . . . ." *Id.* He qualified that he "receive[d] money here at Chatham County Detention Center," and advised the Court to "see inmate account statement for accurate details." *Id.* at 2. When that statement was provided, it indicated that the average *monthly* deposits to his prisoner account were $951.34. *See* doc. 7 at 1. The Court directed him to show cause why his case should not be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(A), because his initial allegation of poverty was untrue. *See* doc. 11.

Rather than respond to that Order, he submitted an accounting that indicates significant deposits, *see* doc. 12 at 1-5, but balances generally below what would be required to pay the Court's filing fee, *id.* at 6-32. He subsequently paid the full filing fee. *See* docket entry dated March 15, 2021. Given the inconsistent information concerning Kinloch's

finances, the Court questions whether his initial protestation of poverty was wholly accurate. Moreover, his submission of his account information, without any explanation of its significance, does not comply with the show-cause Order.

Dismissal has been recognized as an appropriate sanction where *pro se* prisoners have made initial allegations of poverty that have subsequently been determined untrue. *See, e.g., Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997). Rather than immediately dismissing this case on the grounds that Kinloch has "'falsely understate[d his] net worth in order to obtain *in forma pauperis* status when [he is] not entitled to that status based on [his] true net worth,'" *id.* (quoting *Matthews v. Gaither*, 902 F.2d 877, 881 (11th Cir. 1990)), and given the ambiguity created by the account information submitted and his payment of the filing fee, the Court will afford him **one final chance** to explain his finances. He is **DIRECTED** to respond to this Order, as discussed below, and **SHOW CAUSE** why his case should not be dismissed because his initial allegation of poverty was untrue. Submission of account documents, without explanation, will not be a sufficient response to this

Order and will be construed as noncompliance. His "motion for a response," to the show-cause Order is **DENIED** as moot. Doc. 13.

## II. Injunctive Relief and Screening

Kinloch has filed a motion "for order to show cause." Doc. 17. That motion is, in fact, a motion for either a temporary restraining order or preliminary injunction requiring that the named defendants provide specific medical care. *See id.* at 1-2. A preliminary injunction can only be issued, "on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). There is no indication that Kinloch has served any defendant in this action. *See* Fed. R. Civ. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served . . ."). The motion also omits any certificate of service, suggesting that, notwithstanding possible unattested service of the original complaint, no opposing party has been provided notice. *See* Fed. R. Civ. P. 5(d)(1)(B). Since there is no indication of the required notice, to the extent that the motion seeks a preliminary injunction, it might be denied immediately.

To the extent that the motion seeks a temporary restraining order, lack of notice is not fatal. *See* Fed. R. Civ. P. 65(b)(1) (permitting issuance of a temporary restraining order without notice). However, a temporary

restraining order may only issue if the movant explains "any efforts made to give notice [to the opposing party] and why it should not be required. Fed. R. Civ. P. 65(b)(1)(B). Temporary restraining orders are "extraordinary," and, as such, the Court has discretion to issue them. *See Empire State Business, LLC v. Farmers and Merchant Bank*, 2008 WL 2278717, at * 1 (S.D. Ga. June 3, 2008). The purpose of such orders is, generally, "to preserve the status quo until the district court renders a decision on the merits" of the underlying case. *Id.* Kinloch's motion seeks, not to maintain the status quo, but to compel defendants to take actions they have, allegedly, refused to take. *See* doc. 18 at 1. Under those circumstances, the propriety of a temporary restraining order is dubious, at best.

Despite the defects in Kinloch's motion, the Court will not deny it immediately. If Kinloch is unable to explain his apparently deceptive allegations in support of his motion to proceed *in forma pauperis*, as explained above, or address the substantive defects in his pleadings, as discussed below, his case will be subject to dismissal. In that case, any motion for injunctive relief would be moot. *See Gissendaner v. Comm'r, Georgia Dept. of Corrs.*, 794 F.3d 1327, 1330 n. 3 (11th Cir. 2015)

(dismissal for failure to state a claim upon which relief may be granted rendered requests for injunctive relief moot). Rather than directing Kinloch to redress the issues with his injunction motion, then, the Court will proceed to discuss the pleading defects. As a result, the Court will stay final disposition of Kinloch's requested injunctive relief pending his compliance with the directions above to explain his inconsistent financial allegations. If Kinloch believes that he can address the defects in his request for preliminary injunctive relief, he is free to do so **after the Court has determined whether this action will proceed.**

To that end, the Court has reviewed Kinloch's complaint to determine, notwithstanding the question of his *in forma pauperis* allegations, whether it states a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A (requiring the court review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and dismiss "the complaint, or any portion of the complaint," if it "fails to state a claim upon which relief may be granted"). Kinloch's complaint, as filed, does not state a

claim upon which relief may be granted.[1] However, as a *pro se* plaintiff, Kinloch is entitled to an opportunity to amend his complaint. *See Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action.").

Kinloch's complaint alleges that he suffered an injury when he fell on some stairs at the jail. *See* doc. 1 at 5. He alleges that he had had two surgeries, prior to his incarceration, that left him with mobility issues. *Id.* He informed staff by "fil[ing] complaints and requests" that he be housed on the jail's "lower level," because he feared he might fall. *Id.* The timeline is not perfectly clear, but it is clear that within approximately two weeks, "medical staff" acknowledged those communications and "issue[d him] . . . a lower level profile." *Id.* He

---

[1] At screening, the Court applies the standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *Leal v. Ga. Dep't of Corrs.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), accepting all allegations as true and construing them in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Under that standard, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

alleges that the "profile" was never put into effect and he fell some three weeks later. *Id.*

His more recent filings indicate that he was taken for emergency care after the fall. *See* doc. 19 at 1. The emergency physician "placed [him] in a wheel chair and issued [him] medication and suggested physical therapy . . . ." *Id.* He was seen by jail medical staff upon his return and "issued a diagnosis that restricted [him] to a wheelchair for all travel pending further evaluation." *Id.* In January 2021, he was sent by the jail for a CT scan, which revealed "disc bulges in [his] lumbar region." *Id.* at 2. He alleges that he continues to suffer the effects of his back injury; including pain, an inability to stand for long periods, or walk. *Id.* at 2-3.

Kinloch's original complaint contended that the events leading to his fall violated his "constitutional right to due process [and] the equal protection of laws [and] to be protected from cruel [and] unusual punishment . . . [and] the intentional neglect [and] disregard for the well being of detainees." Doc. 1 at 5. His complaint sought monetary damages and release from his incarceration. *Id.* His more recent fillings also seek an injunction requiring jail officials "to provide a medically appropriate

course of surgery and physical therapy . . . designed to restore and maintain the full function of his legs and lumbar region," and requiring an examination "by a qualified orthopedic specialist . . . and a prescription for a course of physical therapy that will restore and maintain the full function of his back and legs." Doc. 17 at 1-2. However, despite the legal labels Kinloch invokes, this Court has an obligation to consider whether the facts alleged state a viable claim, under any apparent legal theory. *See, e.g., Royal v. CEC Ent., Inc.*, 2019 WL 2252151, at * 2 (S.D. Ga. May 24, 2019) ("Liberal construction, in more concrete terms, means that federal courts must sometimes look beyond the labels used in a *pro se* party's complaint and focus on the content and substance of the allegations." (internal quotation marks and citation omitted)). Accordingly, the Court considers whether the facts alleged can support any liability under § 1983.

Section 1983 simply cannot be used to bring a negligence-based tort suit in federal court.² Even read most charitably, Kinloch's allegation that some jail staff did not move quickly enough to address information

---

² *See generally Daniels v. Williams*, 474 U.S. 327 (1986) (prison official's negligence in failing to protect inmate from harm does not give rise to a cause of action under § 1983).

about his mobility issues or failed to provide adequate assistance while he used the stairs sounds in negligence rather than the "criminal recklessness" required to support a § 1983 claim. *Farmer v. Brennan*, 511 U.S. 825, 836-40 (1994). To assert a § 1983 claim, Kinloch must allege not only that he was exposed to "a substantial risk of serious harm" but also that the responsible prison officials acted with "deliberate indifference" to that *known* risk. *Id.* at 834. *Farmer* defined deliberate indifference in terms of the subjective recklessness used in the criminal law: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Negligence, which arises when a person fails to live up to an *objective,* reasonable-man standard of conduct, falls far short of this *subjective* standard. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (explaining that subjective component of deliberate indifference requires more than even gross negligence).

Here, Kinloch's allegations fall far short of asserting the level of culpability required by the Eighth Amendment—actual, subjective awareness of a substantial risk to inmate health or safety. *Farmer*, 511 U.S. at 840 ("Eighth Amendment liability requires consciousness of a risk"); *id.* at 841 ("deliberate indifference serves under the Eighth Amendment to ensure only that inflictions of punishment carry liability"); *id.* at 842 ("a prison official who was unaware of a substantial risk of harm to an inmate may . . . [not] be held liable under the Eighth Amendment [even] if the risk was obvious and a reasonable prison official would have noticed it"). He has, therefore, failed to state a viable claim, under the Eighth Amendment, based on a failure-to-protect theory.

Kinloch's more recent filings implicate an inadequate-medical-care claim. *See* doc. 18 at 4. Prison officials' deliberate indifference to "an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment." *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 972, 1004 (1976)); *see Farmer,* 511 U.S. at 832-33 (although prison conditions may be restrictive and harsh, prison officials must provide, *inter alia,* necessary medical care). A prisoner's mere disagreement with the type of medical treatment

he receives, however, is insufficient. *See, e.g., Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [plaintiff/inmate] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *see also Estelle,* 429 U.S. at 107 ("the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").  Even if the treatment an inmate receives was negligent, that's not enough to support a § 1983 claim.  *See, e.g. Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations.").

Kinloch's pleadings indicate that he received care, both immediately after his fall and subsequently. *See* doc. 19 at 1-2. Although he suggests that the jail is denying physician-prescribed treatment, his allegations on that score are ambiguous. *Compare* doc. 18 at 4 (alleging that defendants conduct constitutes "intentionally interfering with medical treatment once prescribed"), *with* doc. 19 at 1 (stating that

emergency room physician "*suggested* physical therapy" (emphasis added)).  His disagreement with the course of treatment provided and allegation that it was inadequate, without more, does not state a claim of deliberate indifference.  *See, e.g., Hamm,* 774 F.2d at 1575; *Holtzclaw v. Morales*, 2016 WL 4925786 at * 2 (S.D. Ga. Sept. 14, 2016).  His medical-treatment claim, therefore, also fails.

If he wishes to pursue either a claim arising from the jail's failure to protect him from falling or his allegations that jail staff were deliberately indifferent to his medical needs, his must amend his complaint.  In that regard, Kinloch is also advised that neither Sheriff Wilcher nor the otherwise anonymous "admin." are appropriate defendants.  Section 1983 claims cannot be based upon theories of supervisors' liability for the acts of their employees.  *See, e.g., Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liablity"); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional

deprivation."). There are simply no allegations in Kinloch's pleadings that connect Wilcher or any supervisory official, personally, to the events at issue. Kinloch must either establish such a connection or identify the specific jail employees who were personally involved in the alleged constitutional violations.

### III. Other Motions

Kinloch has also filed several other motions in this case that are ripe for disposition. First, he has filed a second motion for appointment of counsel. Doc. 9. The Court previously explained that counsel is not generally appointed for civil litigants. Doc. 5 at 5-6. Although the renewed motion asserts, in a wholly conclusory fashion, that "[t]he issues involved in this case are complex," it provides no further explanation. *See* doc. 9 at 1. Kinloch also asserts that his mental illness, including a PTSD diagnosis, support appointment of counsel. *Id.* However, Kinloch's pleadings—notwithstanding the ambiguous presentation of his finances—continue to indicate that this case presents no "exceptional circumstance" warranting appointment of counsel. *See Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014); *see also, e.g., Kidwell v. Wagoner*, 2011 WL 13175897, at * 1 (M.D. Fla. Feb. 11, 2011) (finding

that *pro se* plaintiff asserting "mental disabilities" was not entitled to appointed counsel where, "based upon his pleadings, motions, and responses, it is clear that he is more than able to conduct this case."). Accordingly, his request for appointment of counsel is **DENIED**. Doc. 9.

Second, he has requested that "the clerk forward a copy of this courts [sic] local rules to his person." Doc. 15. As the Eleventh Circuit has explained, even prisoners proceeding *in forma pauperis*, are not generally entitled "to free copies of court documents." *Jackson v. Florida Dept. of Fin. Servs.*, 479 F. App'x 289, 292-93 (11th Cir. 20120; *see also Wanninger v. Davenport*, 697 F.2d 992, 994 (11th Cir. 1983) ("A prisoner's right of access to the court does not include a right of free unlimited access to a photocopying machine . . . ." (citation omitted)). Kinloch offers no explanation for why a physical copy of the Local Rules is necessary. He is advised that the Local Rules are published, electronically, on the Court's website. *See* United States District Court for the Southern District of Georgia, Local Rules for Civil Cases and the Administration of the Court, *available at* https://www.gasd.uscourts.gov/sites/gasd/files/LocalRules-printable.pdf. His request for the Clerk to provide a copy of those Rules is, therefore, **DENIED**. Doc. 15.

## IV. Conclusion

Accordingly, Kinloch must both amend his pleadings and respond and explain his apparently inaccurate allegation of poverty. Within thirty (30) days of the date of this Order, Kinloch is **DIRECTED** to submit **BOTH** a written response to this Order explaining why he alleged that he lacked the funds necessary to pay the Court's filing fee, but subsequently paid it in full, **AND** an Amended Complaint addressing the defects in his legal claims, as discussed above. If Kinloch can explain both his allegation of poverty and present a viable claim for relief, the Court will consider his request for preliminary injunctive relief. His motion to appoint counsel is **DENED**. Doc. 9. His "motion for response," is **DENIED** as moot. Doc. 13. Finally, his motion for a copy of the Local Rules is **DENIED**. Doc. 15.

**SO ORDERED**, this 13th day of April, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA